UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TUDOR INSURANCE COMPANY,

    Plaintiff,

v.                                                      CASE NO. 3:15cv166-MCR/CJK

AMERICAN CASUALTY COMPANY
OF READING PENNSYLVANIA

    Defendant.
_____/

## ORDER

Plaintiff Tudor Insurance Company ("Tudor") brought suit against American Casualty Company of Reading, Pennsylvania ("American Casualty"), seeking contribution for a claim that Tudor paid to settle a state court lawsuit on behalf of a mutual insured, Strategic Management Partners, LLC ("SMP"). *See* 28 U.S.C. § 1332(a).[1] Pending are cross motions for summary judgment, disputing whether American Casualty's policy is primary insurance or excess coverage in this instance. Having fully reviewed the matter, the Court finds that Tudor's Motion for Summary

---

[1] The Court has diversity jurisdiction. Tudor is a New Hampshire corporation with its principal place of business in New Jersey and authorized to do business in Florida, and American Casualty is a Pennsylvania corporation with its principal place of business in Chicago, Illinois. The underlying dispute exceeds $75,000.

Judgment is due to be denied, and American Casualty's Motion for Summary Judgment is due to be granted.

**I.     Factual Background**

The parties agree that there is no outstanding dispute of material fact. Beginning September 3, 2011, and continuing through all relevant times, SMP served as the property manager for the Royal Crest Apartments located in Pensacola, Florida, under an agreement between Woods Hill Pensacola, LLC ("Woods Hill") and SMP.[2] On September 9, 2011, an individual named Deiante Elijah H.L. Graham was shot and killed in the parking lot of the Royal Crest Apartments. At the time of the injury, SMP was performing functions under the Management Agreement, which lists SMP as the manager of the Royal Crest Apartments and Woods Hill as the owner. The representative of Mr. Graham's estate filed a wrongful death lawsuit against SMP, as well as the alleged owners of the Royal Crest Apartments,[3] for premises liability and negligent security, alleging that his death was caused, in whole

---

[2] The Management Agreement uses only the address of the property, as opposed to the name, but the parties do not dispute that the property is the Royal Crest Apartments. Under the Agreement, SMP was obligated to "diligently and in good faith" "manage, operate and maintain" the property.

[3] It was alleged in the state court suit that SMP operated and managed the Royal Crest Apartments premises and that Parkstone Capital, LLC; Parkstone Capital II, LLC; Parkstone Capital II, L.P.; and AHF Royal Crest, LLC, owned or leased the Royal Crest Apartments premises. Parkstone Capital II, LLC, is the managing member of Woods Hill.

or in part, by SMP. *See Chamika Moultrie, as Personal Representative of the Estate of Deiante Elijah H.L. Graham, Deceased v. Strategic Management Partners, L.L.C., et al.*, Case No. 2013-CA-001620 (Fla. Cir. Ct.) (hereinafter "*Moultrie* lawsuit"), Compl., ECF No. 1-3.  Tudor settled the case on behalf of SMP for the sum of $637,500, and paid the settlement in full.

It is also undisputed that at the time of the incident that gave rise to the *Moultrie* lawsuit, SMP was insured by both Tudor and American Casualty, under separate policies. Tudor issued a general commercial liability policy, number BRP0000450 ("Tudor policy"), effective April 16, 2011 through April 16, 2012.[4]  It named Progressive Management of America as the original named insured; Royal Crest Apartments was added by endorsement as an additional location; and Woods Hill and others were added by endorsement as additional named insureds. Although SMP's name does not appear in the policy, it is undisputed that the policy covered

---

[4] Tudor appears to be a subset of an organization named Western World Validus Group or Western World Insurance Group, which is listed on the policy.  ECF No. 44-2, at 1–3.  At least once in Tudor's Response in Opposition to American Casualty's motion for summary judgment, the Tudor policy is referred to as the "Western World Policy."  ECF No. 51, at 6.  Nevertheless, it is undisputed that Tudor is the insurer for purposes of this policy.

SMP by virtue of its property management agreement with Woods Hill.[5] The Tudor policy has a $1,000,000 per occurrence limit.

American Casualty issued policy number CNP 4018358222 ("American Casualty policy") directly to SMP, effective July 6, 2011 through July 6, 2012. The American Casualty policy has a $2,000,000 per occurrence limit. Its Businessowners Common Policy conditions include an "other insurance" provision, which provides the coverage is "excess" over any other "primary insurance" that is available in certain instances, and also an endorsement stating that the coverage is "excess" over valid collectible insurance when the liability arises out of "your management of property for which you are acting as real estate manager."

Tudor filed this federal declaratory judgment suit, seeking "reimbursement, equitable or ratable contribution[,] and equitable subrogation" from American Casualty. ECF No. 1, at 1. Both parties have moved for summary judgment, asserting that the facts are undisputed and only questions of contract interpretation are at issue. In brief, Tudor argues that it is entitled to pro-rata contribution from

---

[5] The policy provides that a person or organization acting as a real estate manager is an insured. Also, a separate endorsement entitled "Additional Insured-Designated Person or Organization" states that additional insureds are those "required [to be insured] by written contract or agreement with the insured." ECF No. 44-2, at 42. The parties differ over the meaning and applicability of these two provisions of Tudor's policy and over how they impact the responsibility of American Casualty under its policy.

American Casualty on grounds that both policies provide primary coverage. American Casualty maintains that its policy provides only excess coverage in this situation, and, because the *Moultrie* settlement amount did not exceed the limits of Tudor's primary coverage policy, the excess coverage is not triggered in this case.

## II.     Legal Standards

Summary judgment is appropriate if there is "no genuine dispute as to any issue of material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making these determinations, the Court considers the non-movant's evidence as true and draws all justifiable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When considering cross motions for summary judgment, the Court applies the same standards; each motion must be considered on its own with the facts viewed in the light most favorable to the nonmoving party, and to prevail, the moving parties must establish that there is no genuine dispute of fact and that they are entitled to judgment as a matter of law. *See, e.g., Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005); *United States v. Oakley*, 744 F.2d 1553, 1555–56 (11th Cir. 1984).

A federal court sitting in diversity applies federal procedural law and state substantive law.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011).  Thus, the Court applies federal procedural law and Florida substantive law; therefore, Florida law governs the choice of law rules that will apply.  *See Rando v. Gov't. Employees Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009).  "With regard to insurance contracts, Florida follows the '*lex loci contractus*' choice-of-law rule, which 'provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage.'"  *Rando v. Govt. Emps. Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009) (quoting *State Farm Mut. Auto. Ins. Co v. Roach*, 945 So.2d 1160, 1163 (Fla. 2006)).  The parties agree that, based on where each contract was executed, the Tudor policy is governed by Florida law and the American Casualty policy is governed by Georgia law.

Under either state's law, the interpretation of an insurance contract is a matter of law.  *See Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013); *see also Claussen v. Aetna Cas. & Sur. Co.*, 380 S.E.2d 686, 687 (Ga. 1989); *see also Giddens v. Equitable Life Assurance Soc'y of the U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006) (stating this includes "the determination and resolution of

ambiguities"). Where the language is plain and unambiguous, courts give effect to the language of the policy as written. *See Ruderman*, 117 So. 3d at 948; *Claussen*, 380 S.E.2d at 687–88 ("Under Georgia rules of contract interpretation, words in a contract generally bear their usual and common meaning."). Also, the policy must be construed as a whole, giving each provision its full meaning and effect. *See Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000); *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 498 S.E.2d 492, 494 (Ga. 1998) *see also* Fla. Stat. § 627.419(1); O.C.G.A. § 13–2–2(4).

**III. Discussion**

Tudor moves for summary judgment conceding that its insurance is primary but arguing that the American Casualty policy was also primary insurance, and consequently, American Casualty is liable for contribution in the amount of its pro-rata share of the *Moultrie* settlement. Anticipating American Casualty's excess coverage argument, Tudor argues that the excess clauses are either inapplicable or not enforceable due to ambiguity. In response and in its own motion for summary judgment, American Casualty maintains that its coverage is excess under either of two separate excess clauses in its policy. American Casualty further maintains that Tudor's "tortured construction" of the American Casualty policy fails to read all

provisions as a whole. ECF No. 49, at 12. For the following reasons, the Court agrees with American Casualty that a plain reading of the policy language requires a conclusion that its coverage is excess in this situation.

"Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." *Coker v. Am. Guar. & Liab. Ins. Co.*, 825 F.3d 1287, 1294 (11th Cir. 2016) (quoting *U.S. Fire Ins. Co. v. Capital Ford Truck Sales, Inc.*, 257 Ga. 77, 355 S.E.2d 428, 431 (1987)). When the excess provision applies, "excess" insurance is not available until the limits of the primary policy have been exhausted. *See Coker*, 825 F.3d at 1294. Even if both policies have unambiguous "other insurance" clauses, if one excess clause plainly applies, the Court will give it effect and relieve the excess insurer "from any duty to indemnify [the insured] for a covered loss until all primary insurance coverage is exhausted."[6] *Keenan Hopkins Schmidt and Stowell Contractors, Inc. v. Cont'l. Cas. Co.*, 653 F. Supp. 2d 1255, 1265 (M.D. Fla. 2009); *see also Phoenix Ins. Co. v. Nationwide Prop. and Cas. Ins. Co.*, 1:12-CV-00660-JOF, 2013 WL 11975142, at *3 (N.D. Ga. Apr. 22, 2013) (noting, "the mere fact

---

[6] In this case, although each policy contains an "other insurance" clause with an excess insurance provision, there is no argument that the "other insurance" clauses are mutually repugnant, and Tudor has not argued that its excess clause applies.

that two policies contain "excess" clauses – even if the clauses are identical – does not necessarily mean that the clauses are irreconcilable" (quoting *American Casualty*, 185 F. App'x 921, 925 (11th Cir. 2006)).

The analysis in this case begins and ends with the plain language of the policies. The Tudor policy, in relevant part, defines the "insured" as including persons named in the declarations and those who are covered by reason of their role or position with respect to the named insureds. Also, "insured" includes those "acting as your real estate manager." ECF No. 44-2, at 32–33 (Section II – Who Is An Insured). Several special endorsements add additional covered locations, additional "Named Insureds," and "Additional Insureds." Among other things, these endorsements define the Royal Crest Apartments as an additional covered location, ECF No. 44-2, at 59; define Woods Hill as a "Named Insured," ECF No. 44-2, at 68; and define as "Additional Insureds" all persons or organizations required to be insured "by written contract or agreement with the insured," ECF No. 44-2, at 42 (Additional Insured–Designated Person or Organization endorsement). The Additional Insured endorsement, which covers those "required by written contract or agreement with the insured," further explains:

> **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only

with respect to liability for "bodily injury" . . . caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

    A.      In the performance of your ongoing operations; or
    B.      In connection with your premises owned by or rented to you.

ECF No. 44-2, at 42.[7] The Tudor policy also includes an "other insurance" clause, providing, in pertinent part, that when "other primary insurance" is available to the insured, Tudor will contribute only a pro-rata share, as determined by the ratio of its applicable limit to the total liability and all insurers' limits.

The Businessowners Common Policy Conditions of the American Casualty policy, contain an "other insurance" clause, which provides that the coverage is "excess" coverage over "any other primary insurance available to you covering liability for damages arising out of the premises for which you have been added as an additional insured by attachment of an endorsement." ECF No. 44-3, at 81 (Section H. Other Insurance). The "Businessowners Liability Coverage Form"

---

[7] Multiple times, Tudor purports to quote this provision, substituting party names. Tudor quotes the endorsement, without citation, as requiring that the acts occur "in the performance of [Woods Hill's] ongoing operations for [SMP] at the location(s) designated above." ECF No. 48, at 8. Tudor quotes a similar, abbreviated version in a footnote, with a citation to this Additional Insured Endorsement. However, as reflected above, this clause of the endorsement ends at the word "operations." Tudor does not explain the addition of the remainder of the language, nor can the Court find similar language elsewhere in the Tudor policy. Additionally, the Court finds that Tudor's insertion of names is confusing and materially inaccurate.

Page 11 of 18

contains the insuring agreement for "bodily injury" claims under the policy, which were the subject of the *Moultrie* lawsuit. Additionally, a second excess provision is found in an endorsement attached to the policy, titled "Limitation of Coverage—Real Estate Services with Property Management," ECF No. 44-3, at 113, which provides that the coverage is excess when applied to liability arising out of property management. Specifically, this endorsement "modifies insurance provided under the following: Businessowners Liability Coverage Form," and states in relevant part:

> B. With respect to your liability arising out of your management of property for which you are acting as real estate manager this insurance is excess over any other valid and collectible insurance available to you.

ECF No. 44-3, at 113.

There is no dispute that SMP is covered under the Tudor policy as an insured by virtue of its Management Agreement with respect to the Royal Crest Apartments, where the incident occurred. There is also no dispute that the *Moultrie* settlement did not exceed the limits of Tudor's insurance. Tudor argues that its "other insurance" clause limits Tudor's liability to payment of its own pro-rata share because American Casualty's insurance is also primary insurance. Therefore,

Tudor's claim rises or falls on whether either of American Casualty's excess clauses applies.

The Court rejects out of hand Tudor's initial argument that the American Casualty policy's excess clause is unenforceable as a matter of law as a "super excess" clause.[8]  The potential pitfalls of dueling excess clauses are not of concern in this case because there is no argument that Tudor's policy provides only excess coverage, and the American Casualty excess clauses do not contain any language indicating that either clause could operate as a super excess clause, if the situation allowed it.  Thus, the argument lacks merit.

Tudor argues that the American Casualty "other insurance" excess clause of Section H does not apply because it requires SMP to have been added by name through an endorsement to the Tudor policy, and according to Tudor, SMP's name

---

[8] Tudor cites Florida law rejecting "super excess" clauses.  *See Am. Cas. Co. of Reading Pa. v. Health Care Indem., Inc.*, 613 F. Supp. 2d 1310, 1319 (M.D. Fla. 2009).  Although under Florida law, where one policy purports to have "a higher degree of excess-ness" over all other excess coverage, i.e., the so-called "super excess" clause, Florida law rejects the provision, *see Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1321 (S.D. Fla. 2015), no such provision is at issue in this case. Moreover, the American Casualty policy is governed by Georgia law.  Also, when there are two mutually repugnant "other insurance" excess clauses, they will both be cancelled out, and each insurer will be required to pay its pro-rata share.  *See Allstate Ins. Co. v. Executive Car and Truck Leasing, Inc.*, 494 So. 2d 487, 489 (Fla. 1986).  But again, this circumstance is not at issue here.  Tudor does not claim that its coverage is excess in this instance; instead, its policy provides for pro-rata payment whenever there is other available primary insurance.

appears nowhere in the Tudor policy.  Tudor contends that only Woods Hill is named by endorsement and that SMP cannot be considered an insured solely by virtue of the Management Agreement.  Tudor goes so far as to say that the Management Agreement "does not contain any paragraph, clause or section requiring Woods Hill Pensacola, LLC to name [SMP] as an additional insured in its commercial general liability policy or any other policy for that matter."  ECF No. 45, at 24.  This statement is demonstrably incorrect.  First, the Management Agreement for the Royal Crest Apartments between Woods Hill and SMP includes a provision stating that the "Owner agrees to have Manager named as an additional insured on any liability insurance policies maintained by Owner with respect to the Property."  ECF No. 21-4, at 3 (Article II 2.01(g)).  The Management Agreement expressly defines Woods Hill as the "Owner" and SMP as the "Manager" of the property, ECF No. 21-4, at 1; thus, Woods Hill was contractually obligated to include SMP on its liability policies.

Additionally, the Court finds that Tudor's arguments ignore the plain language of the Additional Insured endorsement to its policy, which expressly adds as an "additional insured" all persons or organizations required to be insured "by written contract or agreement with the insured."  ECF No. 44-2, at 42.  Reading the

Tudor policy as a whole together with the Management Agreement, the insured—Woods Hill—was contractually obligated to add SMP to the policy, and the plain language of the Tudor policy reflects that, by a special endorsement including those required to be added by a written contract with the insured, SMP was effectively added as an additional insured.  The liability here for bodily injury to Mr. Graham, allegedly caused by SMP acting on behalf of Woods Hill in the performance of Woods Hill's ongoing operations (as defined in the Management Agreement) and in connection with Woods Hill's premises, Royal Crest Apartments, satisfies the liability requirements of the Additional Insured Endorsement under the Tudor policy.

Tudor also argues that it is unreasonable to construe the Additional Insureds endorsement as applying to SMP because SMP was already an insured under the Tudor policy's general definition of "Who is an Insured," and thus the endorsement had no effect and did not trigger American Casualty's excess clause.  The Court disagrees.  The fact that SMP may have been already considered an insured under the Tudor policy does nothing to defeat the endorsement adding SMP for purposes of American Casualty's excess clause.  Even if the provisions in the Tudor policy could be considered inconsistent, when a policy attaches an endorsement that is

inconsistent with the general policy, the endorsement generally controls. *See Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London,* 696 So. 2d 376, 379 (Fla. 1st DCA 1997); *see also B.L. Ivey Const. Co. v. Pilot Fire & Cas. Co.*, 295 F. Supp. 840, 848 (N.D. Ga. 1968).

Tudor argues alternatively that the excess clause of American Casualty's Real Estate Services with Property Management endorsement does not apply in this instance and, moreover, that it creates an ambiguity rendering both excess clauses unenforceable. The Real Estate Services with Property Management endorsement provides that the coverage is excess "[w]ith respect to your liability arising out of your management of property for which you are acting as real estate manager." ECF No. 44-3, at 113 (Section B). The endorsement also excludes "real estate services" from the Business Liability Coverage and includes a definition of "real estate services," which references the special skills, training, or knowledge of a real estate agent or broker.[9] *Id.* (Sections C and D). Tudor asserts that when reading the

---

[9] C.  The following is added to Paragraph J. of Section **B. 1. Exclusions Applicable to Business Liability Coverage** of the **Businessowners Liability Coverage Form:**
   13. "Real estate services."

   D.  The following definitions are added to **Section F.  Liability and Medical Expenses Definitions:**

Page 16 of 18

paragraphs of this endorsement in *pari materia,* the excess clause of Section B applies, if at all, only to claims where SMP provided *professional services*, not when acting as a property manager on the allegations of the *Moultrie* lawsuit.  Tudor further maintains that the endorsement creates an irreconcilable ambiguity because the index of forms lists the endorsement under the "Commercial Property" heading whereas the Business Liability Coverage Form is listed under the "Commercial General Liability" heading.  American Casualty responds that the endorsement plainly modifies the Business Liability Coverage Form, does not apply only to professional real estate services, and creates no ambiguity.

The Court finds it unnecessary to determine whether the Real Estate Services with Property Management endorsement applies only to "real estate services" and not to SMP's activities because, regardless of whether it applies to this case, the determination has no effect on the Court's analysis that the coverage is excess under the "other insurance" provision of section H.  Tudor's attempt to isolate the forms index to create an ambiguity lacks merit because insurance policies must be

---

**"Real Estate Services"** means services that require special skill, special knowledge, special training, or special judgment, of a real estate agent, real estate broker, real estate personal assistant, or real estate consultant.

construed as a whole, giving each provision its full meaning and effect. *See Auto-Owners Ins. Co.*, 756 So. 2d at 34; *Boardman Petroleum*, 498 S.E. 2d at 494. Tudor has not explained why the endorsement and the "other insurance" clause of Section H must be considered mutually exclusive, as opposed to separate and independently operable means of limiting the coverage to excess, and nothing in the contract requires such a construction or makes either provision ambiguous. Construing the policy as a whole, the Court finds that the "other insurance" provision of section H of American Casualty's Businessowners Common Policy Conditions, limiting American Casualty's obligation to excess coverage, is fully applicable to this case and that no internal conflict is present rendering it ambiguous or requiring its cancellation.

Accordingly:

1. Tudor Insurance Company's Motion for Summary Judgment, ECF No. 45, is **DENIED**.

2. American Casualty Company of Reading Pennsylvania's Motion for Summary Judgment, ECF No. 44, is **GRANTED**.

3. The Clerk is instructed to enter summary final judgment in favor of Defendant American Casualty Company of Reading Pennsylvania and

against Plaintiff Tudor Insurance Company, and close the case.

**DONE AND ORDERED** on this 31st day of March, 2017.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**